IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  Plaintiff,<br><br>v.<br><br>SUNOCO, INC., et al.,<br><br>  Defendants. | )<br>)<br>)  Civil Action No. 05-6336-ABB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM

June   10  , 2009                                                                                  Anita B. Brody, J.

**I. Introduction**

The United States has filed suit against defendants Atlantic Richfield Company, et al. ("AR") and Sunoco, et al. ("Sunoco") under the Pennsylvania Storage Tank and Spill Prevention Act, 35 Pa. C. S. § 6021.101, et seq., ("Tank Act"),[1] the Pennsylvania Uniform Contribution Among Tortfeasors Act, 42 Pa. C. S. §§ 8321-8327 ("UCATA"), and the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a).  The United States also makes a claim against Sunoco under the Clean Streams Act, 35 Pa. Stat. § 691.401 ("CSA").  In this opinion, I address Sunoco's Motion for Partial Summary Judgment on Successorship (Doc. #199, filed under seal) and the United States' Renewal of their Motion for Partial Summary Judgment on Successorship (Doc. #214).  I will grant Sunoco's motion and deny the motion of the United States.

The suit concerns petroleum pollution ("the Plume") allegedly emanating from a section of a South Philadelphia refinery known as the Point Breeze Processing Area ("Point Breeze").

---

[1] I previously held that the United States is barred from asserting both of its Tank Act claims against AR (Doc. #107).

¶ 8.[2]   Point Breeze is currently owned by defendant Sunoco (formerly "Sun Company," or "Sun") and was previously owned by defendant AR.  ¶ 4, ¶ 9.   The Plume migrated underground from Point Breeze and contaminated a nearby United States property called the Defense Supply Center Philadelphia ("DSCP property").  ¶ 11-14; 17-44.  Pollution is still migrating from Point Breeze to the DSCP property.  ¶ 47.

The United States detected the Plume in 1987 on the DSCP property and notified the predecessor agency of the Pennsylvania Department of Environmental Protection ("PADEP") of violations of state environmental regulations.  ¶ 17.  The United States first thought that the Plume came from a leaking fuel line of its own, but came to believe that the Plume originated mostly from Point Breeze.  ¶ 17-44.  In 1996, the United States and Sunoco entered into a Consent Order and Agreement ("The 1996 COA") with PADEP to remediate the Plume together.  ¶ 31.  In 1999, following two years of arbitration, PADEP issued a Unilateral Administrative Order ("The 1999 UAO") requiring the United States to assume sole responsibility for the remediation.  ¶ 40, U.S. Ex. 13.  PADEP deemed the United States liable and ordered it to remediate the Plume alone.  ¶ 40.  The UAO was appealed by the United States to the Pennsylvania Environmental Hearing Board (EHB), which upheld the agency action.  Id.  The United States also sought review of the UAO in the Pennsylvania Commonwealth Court and the Eastern District of Pennsylvania.  ¶ 42.  Those matters settled with an agreement that the United States and PADEP would resolve future disagreements about the site through mutually agreeable dispute resolution.  ¶ 42.  Pursuant to the UAO, the United States has been remediating the Plume and anticipates that future remediation will be required.  ¶ 43-44.  It has already spent $22,000,000 on remediation.  ¶ 75.

---

[2] All citations in this section are to the original Complaint unless otherwise noted.  The facts were viewed in the light most favorable to the United States because I am granting Sunoco's motion.

**II. Background Relevant to Successorship**

In 1985, AR conveyed Point Breeze to Atlantic Petroleum Corporation, which then conveyed Point Breeze to Sunoco in 1988. On December 16, 1992, Sunoco and AR[3] entered into a settlement agreement (the "settlement agreement") to resolve two lawsuits[4]. The United States previously moved this Court to adjudicate that the unambiguous language of the settlement agreement establishes that Sunoco and AR are legal successors for the purposes of the United States' claims associated with the cleanup of the Plume (Doc. #58)[5]. I found that the settlement agreement does not unambiguously establish successorship, but denied the United States' motion without prejudice to renew with reference to extrinsic evidence (Doc. #118). At that time I was not asked by Sunoco to rule on whether the terms of the settlement agreement are unambiguous in that they do not establish successor liability. Sunoco claims that there is no need to consider any extrinsic evidence because nothing in the settlement agreement itself supports the claim that Sunoco is AR's legal successor. (Sunoco's Mot. for Partial Summ. J. on Successorship).

The settlement agreement arose out of a disagreement between AR and Sunoco regarding their respective responsibility for contamination of "assets" sold under two purchase and sales agreements. (Settlement agreement, 1). In order to settle their dispute, AR paid Sunoco $72,000,000 in exchange for Sunoco's promise to:

> [C]onduct, at its sole cost and expense, any off-site recovery or remediation of Contamination related to the Assets which may be required by any law, regulation, order, judgment or settlement agreement; and shall defend and hold ARCO harmless from any claims, orders, judgments, or other attempts to require ARCO to

---

[3] In the settlement agreement, the party I refer to as "AR" is called "ARCO" and "Sunoco" is called "Atlantic."

[4] Both of these cases were filed in the Philadelphia Court of Common Pleas and sought judicial interpretation of contractual indemnities contained in the Sale and Purchase agreement between AR and Sunoco.

[5] Sunoco did not previously move for summary judgment on the issue of successorship.

> undertake or be responsible for any off-site recovery or remediation of Contamination related to the Assets...

Settlement agreement, ¶ 5.

The United States contends that this creates successor liability. In addition to the paragraph quoted above, the United States also relies on the following language to support its claim that the settlement agreement establishes successor liability:

> Except as may be necessary to raise a defense to a claim for remediation which has been assumed by a party by the terms of this Settlement Agreement, the Parties mutually agree that the terms of this Settlement Agreement shall remain confidential . . .

Settlement agreement, ¶ 12

For the following reasons, I find that the terms of the settlement agreement are unambiguous in that they do not establish successor liability. Because the settlement agreement is clear and unequivocal, extrinsic evidence may not be considered.[6] Great Am. Ins. Co. v. Norwin School Dist., 544 F.3d 229, 243 (3d Cir. 2008) (citing Murphy v. Duquesne Univ., 777 A.2d 418 (Pa. 2001)).

### III.  Summary Judgment Standard

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.  Facts are material if they might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue exists when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. at 248-52.

---

[6]  Even considering the extrinsic evidence presented by the United States and Sunoco, a reasonable jury could not find that Sunoco is the legal successor to AR.

Summary judgment is appropriate as a matter of law when the non-moving party has failed to make an adequate showing on an essential element of his case, as to which he has the burden of proof at trial. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999). To overcome a summary judgment motion, a plaintiff may not rely on allegations or denials; a plaintiff must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e).

**IV. Discussion**

Under Pennsylvania's successor liability doctrine,[7] the general rule is that a buying entity does not assume the liabilities of a selling entity merely by buying all of its assets. Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 464 (3d. Cir 2006). One exception to this rule is that successor liability can be created if the buyer contractually agrees to assume the seller's liabilities.[8] Thus, successor liability exists if the "buyer either expressly or implicitly agrees to assume some or all of the seller's liabilities." Id. This exception is analyzed under contract law, as it requires an interpretation of the parties' agreement. Id. Pennsylvania law mandates that "[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement." In re Old Summit Mfg., LLC, 523 F.3d 134, 137 (3d Cir. 2008) (citing Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped, 886 A.2d 706, 711 (Pa. Commw. Ct. 2005)).

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the

---

[7] In the settlement agreement agreement at issue here, the parties agreed that Pennsylvania law would govern (settlement agreement, ¶ 9).

[8] There are three additional exceptions to the general successor liability rule: 1) if a transaction is entered into fraudulently in order to escape liability; 2) de facto merger; and 3) mere continuation. Berg Chilling, 435 F.3d at 464. None of these apply to the case at hand.

5

> language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.
>
> Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.  In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

Great Am. Ins. Co., 544 F.3d at 243 (citing Murphy, 777 A.2d 418).

In the settlement agreement, Sunoco promised to conduct any recovery or remediation of contamination and to defend and hold AR harmless from any claims or orders relating to such recovery or remediation.  The United States argues that this language provides for successor liability.  An agreement to defend and hold harmless, however, has a legal meaning that is distinct from assumption of liability.  Black's Law Dictionary notes that an indemnity clause is "[a]lso termed *hold-harmless clause; save-harmless clause* " (emphasis in original) and defines such clauses as agreements under which "one party agrees to answer for any ... liability or harm that the other party might incur."  Black's Law Dictionary 784 (8th ed. 2004).  The duty to defend only arises if there is a claim against which to defend and the duty to indemnify only arises if the indemnitor has paid damages to a third party.  See McClure v. Deerland Corp., 585 A.2d 19, 22 (Pa. Super. Ct.  1991) ("[c]laims for indemnification arise only when the party seeking indemnity has made a payment on the underlying claim.")

As the Third Circuit said, "one who assumes a liability, as distinguished from one who agrees to indemnify against it, takes the obligation of the transferor unto himself, including the obligation to conduct litigation." Bouton v. Litton Indus., Inc.,  423 F.2d 643, 651 (3d Cir.

1970) (applying New York law). "When a court decides that an asset acquirer should be treated as a 'successor' to the transferor, it is liable for the transferor's debt *as though it were the transferor*." Marie T. Reilly, *Making Sense of Successor Liability*, 31 HOFSTRA L. REV. 745, 746 (2003) (emphasis added). Assumption of liability by consent means that the acquiring entity agrees to be liable to third parties, (Id.) whereas an agreement to defend and hold harmless is an agreement that governs the relationship between the two contracting parties and does not create third party beneficiaries. See Girard v. Allis Chalmers Corp., Inc., 787 F.Supp. 482, 489 (W.D.Pa. 1992) ("[h]olding that an agreement which obligated [Defendant 1] to indemnify [Defendant 2] actually operated in the same manner as a direct action statute would unduly strain the language of a contract which was drafted to govern intercorporate relationships, not to create third party beneficiaries"); Goodman v. Challenger Int'l, No. 94-1262, 1995 U.S. Dist. LEXIS 9368, at *13 (E.D.Pa. June 30, 1995) ("courts have distinguished these assumption arrangements from mere indemnification agreements, which do not suffice to extinguish the liability of the transferor.").

On the other hand, courts have found that parties have expressly or implicitly assumed liability in a contract based on the use of the words "assume" and "liability" in the contract. For example, in Caldwell Trucking PRP v. Rexon Tech. Corp., relied on by the United States, the Third Circuit found that the stock purchase agreement at issue was more expansive than a mere indemnification provision because it included language that Defendant 1 would "*assume* and become *liable* for" and "hold [Defendant 2] harmless from and against any and all *liabilities* . . . ." 421 F.3d 234, 243 (3d Cir. 2005) (emphasis added). The Third Circuit also held that language in an agreement that the defendant "does hereby *assume* all of the *liabilities* and obligations of [plaintiff] of whatsoever nature, *and* does hereby agree to indemnify and hold

7

harmless [plaintiff]" was sufficiently unambiguous to be construed as creating successor liability. Aluminum Co. of Am. v. Beazer East, Inc., 124 F.3d 551, 566 (3d Cir. 1997) (emphasis added); see also Kessinger v. Grefco, Inc., 875 F.2d 153 (7th Cir. 1989) (applying Pennsylvania law and finding that the defendant expressly assumed liability by agreeing to assume all of the third-party defendant's liabilities).

In the settlement agreement at issue, Sunoco does not expressly or implicitly assume AR's liabilities; instead, Sunoco agreed to defend and hold AR harmless from any "claims, orders, judgments, or other attempts to require ARCO to undertake or be responsible for any off-site recovery or remediation of Contamination." (Settlement agreement, ¶ 5). The purpose of the settlement agreement was to "settle and compromise" the disputes that arose regarding the contractual indemnities contained within the sale and purchase agreements between AR and Sunoco[9]. (Settlement agreement, 2.) The settlement agreement was intended to alleviate AR of any responsibility for environmental cleanup. (Id.) The agreement to defend and indemnify implies that Sunoco's duty to AR only arises if a third party brings suit against AR. This is distinct from a situation in which Sunoco agreed to assume AR's liabilities as if it were AR. Furthermore, Sunoco's promise to remediate any contamination required by law, regulation, order, judgment, or settlement agreement implies that any such order, judgment or settlement agreement would be addressed to AR; if it were addressed to Sunoco as AR's legal successor, Sunoco's promise to cover the cost of remediation for AR would be completely unnecessary.

It is particularly persuasive that in the settlement agreement, the parties chose to never use the terms "liabilities" or "obligations" and only use the word "assume" in reference to

---

[9] Even AR, who has not moved for summary judgment on this issue and has no apparent dog in this particular fight, responded to the United States' motion and clearly stated that the settlement agreement was intended to be an indemnification agreement and was not intended to create successor liability.

assuming defenses. There is no language in the settlement agreement that implies that Sunoco agreed to be AR's legal successor. Sunoco specifically agreed to defend and indemnify AR for any claims made against AR but nowhere in the settlement agreement does Sunoco agree to assume any of AR's liabilities. The drafters of the settlement agreement carefully selected the language used and purposefully avoided the words "assume" and "liability." The contracting parties specifically chose the language "shall defend and hold harmless," and did not elect to include any language regarding assumption of liabilities or successor liability.

A court must assume that the contract language was chosen carefully and that the parties understood the meaning of the language selected. <u>Great Am. Ins. Co.</u>, 544 F.3d at 243. Therefore, the complete absence of language in the settlement agreement regarding any assumption of liabilities or successor liability in favor of a promise to defend and hold harmless is dispositive. Whether or not the settlement agreement requires Sunoco to fund AR's defense and/or indemnify AR as a result of this litigation is a separate question from whether or not Sunoco is AR's legal successor. The settlement agreement does not establish successor liability; therefore, Sunoco's Motion for Partial Summary Judgment on Successorship is granted and the United States' Renewed Motion for Partial Summary Judgment on Successorship is denied.

                                                         s/Anita B. Brody

                                                  ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:    Copies **MAILED** on _____ to:

O:\ABB 2009\L - Z\Sunoco MSJ opinion successorship .wpd